The next case this morning is McKinney v. Mills. Mr. Harvey, when you're ready, would you please proceed? Thank you. May it please the court, counsel, I represent the plaintiff in this case, Pam McKinney. Ms. McKinney is the daughter of Dagley Mills, who died in 1999. Mr. Mills owns some property to his death, which is referred to in this case as the Logan Farm. The Logan Farm was 40 acres and it had timber on it. In his will, Mr. Mills left the life estate to his wife, Tressa Nadine Mills, who is also a defendant in this case, and the remainder in fees to his daughter, which is the plaintiff. In September of 2000, the life tenant entered into a contract with the defendants at the sawmill. It was a written contract in which the sawmill and Mr. Harmon were authorized to harvest the quote-unquote marked trees on the Logan Farm. Now, prior to the contract, the trees had been marked at the instance of Defendant Mills' son, Co-Defendant Jones, by a commercial tree cutter. After that marking had taken place, a forester, Mr. Newgood, inspected the property, measured the board feet in the marked trees and determined that there was 146,000 board feet that were the so-called marked trees. Pursuant to the contract, the sawmill completed the cutting of the timber between November 27, 2000 and December 4, 2000. The timber actually harvested was in excess of 280,000 board feet. The plaintiff first learned that the written contract existed in discovery in the case previously pending against Mills when Mills produced a copy of the contract in the Newcomb Letter in 2006. She was not granted leave to enter the Logan Farm in as much as the life tenant had possession until December of 2006. In December of 2006 is when she learned that the harvest had indeed exceeded the contract by almost a factor of two. Now, the plaintiff did not know, did not have access to either the Logan Farm or the contract in the Newcomb Letter which defines the extent of the authorized cutting until 2006. She knew that the trees were being cut. She didn't know it was in excess of that which was granted. And she didn't know that they were being cut pursuant to a written contract which placed specific limits on what the sawmill could cut. And that's the critical fact here, Judge, because all the causes of action that we bring against the sawmill are not because the sawmill participated in the cut ad initio, they're because the cut that was actually performed was beyond what the contract allowed for. And so the two facts that are important of which the plaintiff had no knowledge was first, of course, the amount of the cut, but secondly and much more importantly, the limitations placed by the contract on whether the sawmill had an arguable right to cut. That's the critical factor in this case. That's the factor which we believe the trial court did not take into consideration properly and which leads us to this court today. Didn't the defense claim that after the timber was harvested in 2000, I believe, that she called Harmon and asked how much about the timber? So isn't she on notice at that point? She knew that Harmon conducted the cut. There's no question that she knew that Harmon conducted the cut. What she didn't know, and the reason for that inquiry, by the way, and you know because you've seen this case before, you know that there was a claim filed against Defendant Mills for waste, and we were here before on whether or not we could bring an action in that case on the wrongful pre-cutting act against Mills. What she didn't know, and the reason she made the inquiry of Harmon to start with, was did she cut the trees and how much money did she get, to which there was no answer. What she didn't know is that the contract limited the cut that was arguably allowable, and she didn't know because she didn't know the contract. She didn't know that Harmon's activities exceeded the allowed amount in the cut. She had a different attorney back in 2006. That's correct. She did. And that attorney could have discovered that. I'm not sure that that's true, Judge, and I'm not sure that there's anything in the record that suggests that that's true. And I say that to you for a couple of reasons. First of all, obviously the inquiry that was made suggests that Ms. McKinney knew that her mother, Ms. Mills, a live tenant, had harvested some trees. She also knew at that point that as the live tenant, she didn't have a right to do that on a commercial basis. That's all she knew. There's nothing in the record that states how she could ever have determined the existence of the contract with the limitations that places on sawmill prior to the time that it was actually produced in discovery. So your claim is that when she discovers the breach, it's a question of fact. Yes. It should not have been. Yes, absolutely. And I guess what I want to say to you is I'm claiming essentially two things about that. First of all, obviously in terms of the discovery rule issue, it's a question of fact as to when she knew or could have known. And there's nothing in the record that suggests how she could have had knowledge of the contract prior to its discovery. But the second thing is the first cause of action in the amended complaint is an action on the contract. And it's a written contract. And it has a 10-year statute of limitations. And the action against sawmill for breach of contract was brought in within the 10-year period. Now, one of the things that the trial court did, and I think this was an error, and one of the reasons for this appeal is the trial court says, well, these causes of action are for conversion. Well, that's just simply not true. There are three causes of action in this case. The first clearly is for breach of a written contract. I don't know how you can say it more clearly than we did in the complaint. The second is for conversion. The third is for the wrongful tree-cutting act, which is a revisit to something that this court not had once before. And I think we've decided against you on that. Well, you did in terms of the last 10. But at this point, we're talking about what, and we'll deal with that a little later, truly a trespasser who's not an owner of the trees and doesn't own any estate of the property. I think that's a distinguishing factor that we'll get to. But the two points about the contract, first of all, is, and one of the things that we want to be real clear about here, and this is the assertion where I think the trial court erred and where I think the defendant is a bit off base, the claim is that this can't be a breach of contract because it's a conversion. I have cited to you two cases that this court has previously cited, and Judge Weston, you and I were involved in one of those before you were a judge and before my belly was big and my hair was fine. In the Bills-King City Stationery case, this court determined that the breach of a contract may also be a separate, the same conduct may be a separate and independent tort if there's a separate tortious action arising out of the same conduct. In the Bills-King City Stationery case, there was a contract for the purchase of a company which was breached by the defendant, but the defendant's conduct was so in the breach that it also amounted to a separate fraud, and this court specifically ruled in that case that the same conduct may constitute not only a breach of contract, but may result in a separate fraud if the factors justify it. This court ruled the same thing in the Prufus v. First Star Bank case. The Prufus case has three causes of action. The first cause of action was the breach of contract. The second was for conversion arising out of the same breach, and the third was for a statutory consumer fraud action. In the course of doing that, this court's Judge Hopkins said very specifically that the same conduct may give rise not only to a contract action, but to a separate tort action, quote, such as conversion. So the fact that the contract breach may also be a conversion doesn't mean we can't bring an action for the breach of the contract. The second issue with regard to the contract is whether or not the plaintiff has standing to bring an action for the breach of the written contract. She didn't sign the contract, but she was in privity with the defendant Mills, who did. We've cited in the federal case in the brief Kaplan v. Shur and Brothers, Inc., which is a Seventh Circuit case, but it goes through its own Illinois law and it gives a pretty good compendium of what Illinois law is about who can enforce a written contract. And what it says, essentially, is this. The contract may be enforced by those who either are parties to it or in privity to those who are in party to it. It cites a number of cases going back to 1910 in which it details what privity means. The long and the short of that in this case is that the plaintiff is in privity with defendant Mills because they are successive interest holders in the same estate. Now, in the Kaplan case, they cited a number of Illinois cases from the Illinois Supreme Court. We've cited them in the brief. There's Collins Company Limited, which was decided by the Supreme Court in 1988. There's the old case of Moore v. Shook in 1916 and the case of Powell v. Kwan in 1910. What those cases all say is there is privity of state, privity of contract for a state. That's the word used. Where there is a mutual and successive relationship to the same rights and property. I think this Court's previous Rule 23 opinion at page 7 specifically describes precisely that interest because what this Court said was is that a life tenant has the present possessory interest and the right to undisturbed possession of the land. And this was in the course of its ruling that we couldn't bring a wrongful tree-cutting act as the remaindment against the lie of the state because it was describing the relationship between the estates. It says, as the holder of the lie of the state, defendant Mills had an ownership interest in the trees. The trees are still until severed a part of the real estate she has possession and exclusive right to enjoy. The remaindment did not have authority to enter into the property and commercially harvest the timber. The Court then notes that the remaindment is given a future interest by the transferee that will become a present possessory interest upon the expiration of the lie of the state, i.e., it is a successive interest to the same property. Ergo, there is privity. If there is privity, there is under the decisions of the Illinois Supreme Court the right for the privy to enforce the contract. That fact was never considered by the trial court. The point, then, is there is a written contract which specifically authorizes the solving to go onto the property and to do limited prescribed acts. That contract is breached. The action for that breach is brought by the privy of the person who signed it, owning a different estate, a successive estate of the same property, and an estate which arises from the same instrument. It is the will of Mr. Williams, of Mr. Mills, and the Illinois Supreme Court in the Cole v. Montgomery case determined that privity exists where the interest arises from the same interest. So as the privy, she has a right to enforce the contract, and the statute of limitations on the written contract is 10 years, and this action is brought within 10 years. So as to the statute of limitations on the first count, clearly the action is brought within the statute of limitations. Now, the second two counts. The second count, clearly, is a statutory action for conversion, and we've gone through and the briefs go through and define conversion in rather black-letter terms, and clearly that is not a disagreement. But what the conversion arises out of in this case is not the fact that the sawmill went onto the land and cut any timber. I don't think we have an action for conversion for the first 146,000 board feet that was cut on that property because there is at least an arguable right to do so on the part of the sawmill, not on the part of Mills, but on the part of the sawmill. The action for conversion is the taking of the 280,000 board feet, that is the part of that, the 130-whatever-thousand it is, in excess of what's allowed in the contract. That's what we say the conversion consists of. Our complaint is very clear about that. Now, the court says, and clearly it's the case, that the statute of limitations for conversion is five years. No disagreement about that. There's also no disagreement about the discovery rule and what it requires. What the discovery rule requires, and everybody cites the Knox College case that's in the briefs of both parties, there's no question about what it says. The discovery rule stands for the proposition that the statute of limitations starts to run when a person knows or should have known of his injury and knows that it was wrongfully caused. As to the sawmill, that knowledge is solely dependent upon the two facts we've talked about earlier. First is the existence of the contract. Second is the amount of the cut. Now, there is no question on this record, and there's nothing raised in any of the motions filed by the defendant, as to how it is that the plaintiff could ever have learned of the existence of the contract prior to its being produced and discovered. Now, clearly we knew there was a cut. The record in this case isn't clear as to how we could have found out about the extent of the cut prior to the time that in the course of the litigation we obtained access to the property to have an expert do the inspection. It was December of 2006 when our expert tells us there's in excess of 280,000 board feet cut, and we've made reference in the brief and in the record as to the steps we had to go through to get access to the property. So we believe those two facts regarding discovery are what simply indicates that Ms. McKinney could not have known about the damage she incurred at the hands of the sawmill, the wrongful conduct of the sawmill, prior to those two facts. But let's just assume for argument that you can say for some reason in some way that she could have discerned that the cut was excessive in the year 2000. That is, that there was 280,000 board feet cut. Not that the cut was excessive, but that 280,000 board feet was cut in 2000. Had she known that? She still could not have known that that amounted to a conversion without knowing the specific limits placed on the sawmill in the contract, because the contract is the critical factor in the second two causes of action. The record in this case is absolutely devoid of any claim as to how, other than the way we found out, we could have known or should have known about that limitation. So that's the conversion, and that's where I think the trial court erred in failing to apply the discovery rule. And defense claims that as a remainder, she has this remainder interest. She had the right to inquire and require an accounting of the timber, right? That's what they claim. Okay. That's what the action for waste is all about. Okay. So how do you counter that? She had the right to inquire and had the ability to do so. And when we did so, we got no answer. We eventually bring the claim for waste against mills, which is effectively what that accounting is all about. But what the defense never tells you, Judge, we may be able to know. Let's assume for purposes of discussion, and I don't concede this, but for purposes of argument, let's assume that somehow or the other, she could have determined, have gotten access to the property before she did, and determined that 280,000 bore feet was cut. Let's assume that she could have done that. How could she possibly have gotten the data regarding the limitations of the contract before she did? And the defense doesn't suggest how we could have done that. Because obviously the two critical elements are the amount of the cut in the contract, but the one that makes the tort case against the sawmill is the contract and the limitations that it places. That is the point that they never address at the trial court, and frankly they don't address in their brief. She could determine and discover the existence of the contract, but not the extent of the contract. She could determine that there was an arrangement of some restriction made because she knew that the cut had actually been done by the lumber team, by the sawmill. There's nothing to suggest how she could have determined, because if you look at the contract, Judge, it limits. And I'm looking at the third paragraph of it. It limits it to, quote, the marked timber located in White County, Illinois, with the description of the loading farm. It then warrants, mills warrants to sawmill that she owns the right to do it. Now there's no, first thing. The second thing is the Newman letter measures the marked trees at 146,000 bore feet. There's nothing ever suggested as to how we could have known that prior to its production and what we could have done to have obtained that prior to doing what we did to obtain that. There's nothing raised in the trial court, and for that reason, the trial court erred in not applying the discovery rule, not only in the conversion count but also in the wrongful tree count. Thank you. Thank you. Mr. Stewart. Thank you. Please support the counsel. My name is Greg Stewart. I'm from Conger Valley Professional Corporation in Carmine, and I'm here today representing Thomas Harmon and Taylor Sawmill, who are two of the defendants that were brought into this proceeding in 2010, late in the year. This proceeding was commenced back in 2005 as practiced between the circuit court of White County and this court and back and forth over time, but we're back today over an issue of a dismissal of three causes of action filed by Ms. McKinney in the lawsuit that originally started against her mother, but now includes Mr. Harmon and Taylor Sawmill. The counts at issue are counts 5, 6, and 7 of the various amendments of the complaint that occurred, and as Mr. Harvey indicated, there is an issue here about count 5. Count 5, before you read the count, it indicates that there was an excessive cut of timber or timber was cut in excess of a contract. In thinking about this and trying to simplify it, here's the way that I've thought about the issue. If you own an orchard and I came to you and I said, can I walk into your orchard and pick 100 apples at a dollar an apple? You say, yes, sir, you can. And I walk in and I pick 100 apples, and I also pick 100 more. And I walk by you and you don't see how many apples I have, but I hand you $100, and I leave. And then you find out later that I took an extra 100 apples. Did I breach the contract? Actually, I performed the contract. I paid you for 100 apples that I took, but I also took 100 more apples. What is the 100 more apples I took? Did I breach the contract? Or did it converge? I performed the contract. You performed the contract by allowing me to take the 100 apples and taking my $100. That's what this case is. That's what count 5 is. And that's why we cited the Lubecki case, the Western District of Pennsylvania case, which talks about a timber cutting. In Lubecki, there was a timber cutting. There was an allegation that excess timber was cut. The lawsuit develops. Lubecki talks about how the Uniform Commercial Code applies to cut timber, severed from the realty, becomes a personal property. And then it talks about the excess timber being a conversion. And if you look through count 5 of the complaint that was filed in 2010 against Mr. Harmon and against Taylor Sawmill, that's what you see. Is this, you cut more timber than you should, therefore it's a breach of contract. In the argument, and this is what Judge Dinn noted, and you'll find this in the record. It's at page 986. It's a part of Judge Dinn's order. When arguing the motion about this issue of statute limitations under a 2619 motion to dismiss, counsel for the plaintiff conceded that count 5 is more likely an action for a conversion than any breach of contract. And the reason why the breach of contract continually is brought up is because the distinction between a 5-year statute of limitations and a 10-year. On a breach of contract action for 10 years, clearly the action was brought just a little bit within the 10 years of the cut. Just a little bit. Does that matter? It doesn't matter to me now because I say it's an action for a conversion. It's 5 years, but you're conceding that if it's 10 years, it was brought within the statute of limitations. If it was brought within the 10 years, then it was brought within 10 years of completion of the contract. But the problem is it's not a breach of contract. You know, our causes of action in many respects are characterizations. Are you arguing that an action, let's assume that this action took place, that there was more cut than the contract called for being cut? Are you saying that that action is incapable of being characterized both as a breach of contract and also characterized as a conversion because the concepts are mutually exclusive? And if so, what is your citation for that? The concepts are not mutually exclusive. Mr. Harvey cited cases that says that they're not. However, you're not bound by the way that they call their cause of action. There's plenty of authority for that. I'm sorry, I didn't hear the last words you said. There's plenty of authority to say you're not bound by if I plead something and I say count one breach of contract, but it doesn't read that way, you're not bound by what I call it. Right. I think we can all agree upon that. You look at what is within the confines of the count, and when you read it, and you've heard Mr. Harvey's argument, basically what they say is this. They performed the contract. They cut the timber they were supposed to, and then they cut more. That's a conversion. That is not a breach of the contract. The contract was performed. There's no allegation in this proceeding or anything that's been filed in this proceeding that says, well, the life tenant didn't receive the proceeds from Mr. Harmon or Taylor Sawmill because of that. No, the contract was performed. They say he went above and beyond. He took the extra hundred out. And your position, if I understand it correctly, is that must be a conversion. It cannot be a breach of contract. That is correct. That's the position of Mr. Harmon, the position of Taylor Sawmill. And that's what Lubecki talks about. It's a conversion. Now, you would never make this argument if it was within the statute of limitation, within the conversion, because if we were within five years as defending your client, you'd never argue it's not a contract. It's a conversion because your exposure to damages is greater. I mean, this argument can only take place if the statute of limitations is run. So there's not any cases to support your argument, are there? To support the argument that it's a conversion, not a contract. I guess the plaintiff would want to argue that potentially. Well, and it comes back to two points. And it was conceded in argument that the cause of action was more likely one of conversion based upon the facts pled within the count five. But he didn't argue it to the exclusion of the contract. Here's what Judge Dan put in his ruling to reflect what was said in the argument. Defendants Taylor Sawmill and Thomas Harmon argue in their combined motion to dismiss the plaintiff's cause of action is not a breach of contract, but one for conversion. The plaintiff in oral argument concedes the proper cause of action is more likely one for conversion in the court agreement. That was the finding of Judge Dan based upon what was presented to him at the trial court. And exposure for damages in conversion because of the punitive nature is more than what you would get in a breach of contract. I agree. Let's look at something Judge Wexler brought up, this issue about what could the plaintiff have learned and how. We've cited in our brief at page ten the two cases about a remainder interest can require an accounting and to view the property. Let's look at the facts on that. What's the timeline here? The timeline is the plaintiff obtained her life estate interest in 1999 upon the death of her father. The next timeline is once that property transferred. Based on the death, she told her mother, the life tenant. I don't want him to cut him down. We've cited you to the record where that statement was made. We also know that based upon the actions of the plaintiff, she learned shortly after the cut timber had been cut against her specific direction. We also know that very shortly after the cuts occurred, she contacted Mr. Harmon wanting to know how much timber had been cut and what had occurred. She also had a third party contact Mr. Harmon and say, what happened? How much did you cut? I think it's clear to say she didn't want the timber cut. She had already said that. Now she's in fire. She also retains the services of Mr. Allendale, an attorney from McLean, who writes a letter inquiring about what's going on. Clearly, she didn't want it to happen. She said she didn't want it to happen, and she's looking. But she also had the right, per law, to require an accounting and to view the property. What do you get when you require an accounting? You find out what timber was cut and why. She clearly had the ability to determine that there was a contract in existence between the life tenant and Taylor Sawmill about the cutting. She chose not to. She said. With that knowledge, she sat. Until 2005, she files an action for waste. What were the replies to these inquiries that you just listed? What was the substance of the replies to the various inquiries that you just told us about from the record? And these are contained in our brief citation. But basically it said that Mr. Harmon told the plaintiff, you need to go check with your mother to find out. This is an issue between your mother and you. Well, let me rephrase my question. Yes. Was she ever told of the substance of the contract? The amount to be cut, compensation to be paid, or was she ever told how much was actually cut? Based upon the record as it comes before this court, the answer was no. She was not told. She was told by Mr. Harmon, you need to go find out from your mother. No, I understand that. And the downing ladder was not responding to that type of specificity. But she was on notice there was a cut. She knew there was a cut. She knew she didn't want the cut. But she sat on her hands in spite of that knowledge that her remainder interest in this property could have been injured by this cut. Clearly she thought she was injured because she brought a lawsuit in 2005. So this knowledge is in plaintiff's head. But she does not act on it, even though she has the ability through the cases that we've cited at page 10 of our brief to require accounting and to view your property. That's the Knox v. Solita case, which is the discovery. Now, here's what she did know, and I want to focus on this. She did know she didn't want trees cut. She knew the trees were cut, and obviously she knew that Harmon or Taylor Sawmill was involved in the cut because that's where she went for her information. That's clear from the record. And Mr. Harvey indicated that the record is devoid of any way for her to have the ability to determine this contract existed or the extent of the cut, whether it exceeded the contract or not. Judge Wexler pointed out at page 10 our citation to the authority about the accounting and the ability to view the property. That was in her hands and her rights since 1999 when she acquired the property. She had that ability. She didn't do it. The discovery rule. She knew there was a potential claim. There was timber cut on her property in which she had an interest that she didn't want cut. Clearly she didn't get along with her mother, but she did know. That is why when you add the pieces together, count five being in action for conversion, given the example I've given you, a five-year statute of limitations. When should Mills have known or Ms. McKinney, I'm sorry, have known or should have known that there was an actionable right? That fell all the way back into the year 2000 or 2001 because she knew of the cut after it happened, but she did not. And you can look at the ruling of Judge Dan. It's included in the appendix to the appellate where he goes through all of the facts, cites them, indicates his reasoning, and the fact that she should have known that she had the action or she knew the relevant facts and that she said in her hands and that this lawsuit was not brought against Taylor Sawmill or Mr. Harmon until late 2010. Or just right at the verge of the 10 years from the date of the cut. The other actions, wrongful tree cutting and the Wilflin-Wanton tort count, which are counts six and seven. Clearly there's no argument that it's not a five-year statute of limitations on those counts. The same analysis applies about the discovery ruling and why the plaintiff knew and what she was inquiring about. So the reason why that, in my opinion, this case seems to keep centering around the breach of contract is that 10-year expanded statute of limitations. What do you call count five? Again, what it's listed to be is not controlling. It's the allegations contained therein. And it says you performed the contract. You cut the marks in her. But you went above and beyond and you took stuff that you shouldn't have. Is that a conversion? Yes. I took 100 more apples than I should have. I converted them to my own personal use and I didn't pay them. Did I breach my contract with you that said, Your Honor, I'll buy 100 apples for you for $100? No, I performed the contract. It's a conversion. That's Lubecki. That's why Lubecki is in our brief. And that's why Lubecki is in the appendix. We're not bound by Lubecki, are we? You are not bound by Lubecki. I read Lubecki and it gives a nice recitation of the UCC law about how personal property is severed from the real estate and that whole logic. But Lubecki, I think, makes it clear from a logical standpoint how this is a conversion for an excess cut. And throughout the complaint, all it says is excessive cut, excessive cut. So it is our request that the court fund the decision of Judge Daniels dismissing all counts against Mr. Solomon and Taylor Sawmill for them being barred by the applicable statute of limitations, which is the five-year. We've cited all the authority for that in our briefing. We don't think that's – that fact is conceded except on the breach of contract claimed by the appeal. Any other questions on entertainment? With that, I think we've focused on the real issues in this case. Again, keep in mind my apples. I think that analogy is really applicable here. We have timber. We have apples. Did I breach a contract by taking 100 more apples or did I convert them? Thank you. Thank you. Rebuttal, please. Yes, thank you. Thank you. Mr. Stewart and I have known each other a long time, Judge, and he always has an analogy. Let's talk about the apples now. The easy answer to the apples analogy, did he convert or did he breach the contract, the short answer is he did both. He did both. How do I know that? I know that because I've read this court's decision in this versus First Star Bank. And I quote from 354 Elab 3rd at 1131 where this court says, well, you know, you can't get punitive damages for breach of contract. And then this court said, however, punitive damages are recoverable where the breach of contract constitutes an independent tort such as conversion. So the biggest problem that he's got is it's not either or. It's both. I know that because the wisdom from this bench has on at least two occasions that we've cited said that. And, you know, he has never addressed this court's decision about five-year total. He didn't do it in his brief. And he didn't do it in a day. The answer to the apples analogy is that it's both. Otherwise, contracts are useless. Now, obviously, he concedes that the statute of limitations of the written contract is 10 years. We're within that period of time. He concedes that. Secondly, he doesn't even argue in this court that the plaintiff is not in privity and is not able to enforce the written contract. Ergo, I submit to you he has clearly conceded that the answer to the question is that Judge Dinn was wrong. Now, as far as Judge Dinn saying these were all conversion counts, they clearly aren't. In the appendix to the brief, we've provided you a copy of our amended complaint. You look at paragraphs 11 and 12, the first count of the amended complaint, clearly sounded breach of contract. He says we conceded at the trial court they were conversion. Please look at the motion to reconsider that we filed in the trial court at page 3, which is an appendix to the brief, in which we say, Judge, you messed up. The first count's not conversion. It's contract. Clearly, we acknowledge that the second count is a conversion count. And to the extent that you can analogize the wrongful tree-cutting act as the, quote-unquote, trespass by reason of the excessive cut, it's sort of in the nature of a conversion because, as I read this court's previous opinion in Rule 23 order, you sort of said that the wrongful tree-cutting act was kind of in the nature of a conversion action because it has to do with somebody, quote-unquote, trespassing, that is, taking trees they don't have a right to. So, clearly, the second two cause of actions may be in the nature of a conversion. The first one isn't. And, no, you can't read this record and conclude that it is. The final issue, again, is the discovery. And I just simply submit to you, as I said before, and I didn't hear any answer from counsel, as to despite all of the inquiries that were made on behalf of Ms. McKinney, she was met by everyone with a stone wall. How is it, prior to getting in discovery what we got with regard to the contract and the nuclear letter, how is it we were supposed to have gotten it? And, without it, how are we on notice of the wrongful conduct of the sawmill, even to inquire? Please keep in mind, he wants to give you the red herring that the initial cut somehow puts us on notice of this. That's not true. We know the initial cut is wrongful by Mills because it's a waste. We know that Mills had the sawmill do the cut. What we don't know, what we don't know, and there's no way we could have found this out that's ever been suggested, is that Mills, once she signed the contract with the sawmill, she signed it with limitations. And the wrongful conduct of the sawmill is the breach of those limitations. That's what takes us to the second two accounts that relate to conversion. We think the judge is wrong and should be reversed. Thank you. Thanks to both of you for your arguments today. They've been both very interesting and informative. And we'll take the matter under advisement and provide you with a decision. We're going to take a break.